**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN BRADLEY GUMBS,

        Plaintiff,

        v.

JOHN O'CONNOR, et al.,

        Defendants.

Civil Action No. 10-1520 (MLC)

**O P I N I O N**

**APPEARANCES:**

Kevin Bradley Gumbs, Plaintiff pro se
Northern State Prison, P.O. Box 2300, Newark, NJ  07114

**COOPER, District Judge**

    Plaintiff, Kevin Bradley Gumbs, a prisoner confined at Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals under 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.  The Court must now review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

**I.  BACKGROUND**

    The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on May 2, 2008, Detective John O'Connor of the Keansburg Police Department came to his home and told the home's co-owner ("Co-Owner") that he had a warrant for Plaintiff's arrest.  The Co-Owner permitted him to come in to search for Plaintiff.  Plaintiff alleges that instead of, or in addition to, searching for him, O'Connor conducted a search for evidence, removing from the home a locked box safe containing cash and jewelry, which he found under a bed, and ceasing his search only when the Co-Owner pointed out that Plaintiff could not fit in a dresser drawer which O'Connor had pulled open. Plaintiff alleges that, during the course of the search, O'Connor made remarks to the Co-Owner and the Co-Owner's child that Plaintiff was involved in drugs.

Plaintiff alleges that on May 3, 2008, his attorney called the Keansburg Police Department and was told by Defendant John Doe that there was no arrest warrant for Plaintiff, but that the police only wanted him for questioning.  On May 5, 2008, Plaintiff alleges that he read a newspaper report stating that he was being sought on warrants and was being charged with multiple counts of drug possession and distribution.  Plaintiff alleges that this report was based on information provided by police chief James Pigott, not named as a defendant here.

Plaintiff alleges that on May 6, 2008, he turned himself in to a parole office in Red Bank, New Jersey, where he was placed

into custody, in handcuffs, until an officer of the Keansburg Police Department came to pick him up. Plaintiff alleges that the Keansburg police officer then placed him in handcuffs, too. Plaintiff alleges that he was then taken to Keansburg Police Department headquarters where he was charged with multiple drug-related offenses. Plaintiff alleges that Chief Pigott then disclosed more detailed information to the press about Plaintiff, including information that Plaintiff had surrendered and had been charged with certain offenses. Plaintiff alleges that he was incarcerated as a pre-trial detainee for approximately four weeks, after which the charges against him were dropped.

Plaintiff seeks to assert constitutional claims for violation of his right to privacy, illegal search, false arrest, and false imprisonment, all of which the Court construes, collectively, as claims that O'Connor and/or John Doe police officers violated Plaintiff's rights under the Fourth Amendment to be free from unreasonable searches and seizures, and state law claims for defamation of character.[1] The named defendants are O'Connor and John Does of Keansburg Police Station. Plaintiff seeks monetary damages.

---

[1] Plaintiff also seeks to assert a claim for endangering the welfare of a child based on the fact that his address was given to the press. Plaintiff has not asserted any facts suggesting that he has standing to assert this claim. He has not asserted that he has any relationship to the child residing in the home, whom he identifies as the Co-Owner's child; nor does he purport to be bringing this claim on the child's behalf. This claim will be dismissed.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis action); 28 U.S.C. § 1915A (action in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner action brought as to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in the plaintiff's favor. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting predecessor of § 1915(e)(2), former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the

4

claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does

5

> not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the

> type of notice of claim which is contemplated by Rule 8. Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, . . . district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the

7

> Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances. ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense.

### III.  SECTION 1983 ACTIONS

To state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and, (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury" complained of); Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

### IV.   ANALYSIS

**A.   Fourth Amendment Claims**

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

**1.   The Search of Plaintiff's Home**

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." U.S. v. Jacobsen, 466 U.S. 109, 113 (1984) (footnote and citations omitted). "[V]alid warrants to search property may be issued when it is satisfactorily demonstrated to the magistrate that

fruits, instrumentalities, or evidence of crime is located on the premises," even if "the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement." Zurcher v. Stanford Daily, 436 U.S. 547, 559-60 (1978). "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). Those exceptions include search incident to arrest, search made in "hot pursuit," and search pursuant to consent. Katz, 389 U.S. at 357-58.

For a search to be constitutional based on consent, the consent must have been "voluntarily given, and not the result of duress or coercion, express or implied." Bustamonte, 412 U.S. at 248. "Voluntariness is a question of fact to be determined from all the circumstances," Bustamonte, 412 U.S. at 248-49, and resolution of that question must take account of "subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents". Id. at 229.

Among the factors relevant to a determination of voluntariness is the extent to which police officers suggest that they can obtain a warrant if consent is not given.

> When evidence exists to show ... -- that a
> defendant believed he must consent -- such
> evidence weighs heavily against a finding

10

>> that consent was voluntarily given. And when that belief stems directly from misrepresentations by government agents, however innocently made, we deem the consent even more questionable.
>
> [United States v. Molt, 589 F.2d 1247, 1251-52 (3d Cir. 1978).] The question of voluntariness often turns on the language the police use in indicating that they will seek a warrant if they do not get the defendant's consent. When the police state that they will <u>seek</u> to obtain a warrant if consent is not given, there is generally no coercion absent other factors. However, when the police give the impression that the obtainment of the warrant will be automatic, there is a strong presumption of coercion. In a case involving a similar situation, our court of appeals stated:
>
>> To the extent that some versions of [the police's] statement suggest that acquiring the warrant would be a foregone conclusion, [the police] might have conveyed to [the defendants] the impression that they had no choice but to consent. On the other hand, if the district court found that [the police officer] clearly indicated to [the defendant] that absent consent, he would only <u>seek</u> to obtain a warrant, and that a magistrate would first have to determine that probable cause existed, such a finding would not militate at all against a finding of voluntary consent.
>
> United States v. Sebetich, 776 F.2d 412, 425 (3d Cir. 1985), reh'g denied, 828 F.2d 1020 (1987), and cert. denied, 484 U.S. 1017 (1988) (emphasis in original).

United States v. Flores, 1991 WL 171394, at *10-11 (E.D. Pa. Aug. 29, 1991) (citations omitted), aff'd, 970 F.2d 900 (3d Cir. 1992) (Table).

The person giving consent to the search also must have the authority to do so. United States v. Matlock, 415 U.S. 164, 171 (1974). Thus, consent may be given by a third party "who

11

possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Id.

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 171 n.7 (citations omitted). Cf., e.g., Frazier v. Cupp, 394 U.S. 731, 740 (1969) (by allowing cousin use of duffel bag, and leaving it in cousin's home, cousin possessed authority to consent to its search notwithstanding owner's allegation that cousin had permission to use only one compartment within bag); Stoner v. California, 376 U.S. 483, 488-90 (1964) (search of hotel room cannot rest upon consent of hotel proprietor in absence of indication that proprietor has been authorized by occupant to permit police to search occupant's room); United States v. Kelly, 529 F.2d 1365 (8th Cir. 1976) (consent given by common carrier does not satisfy requirements of Fourth Amendment).

 Plaintiff alleges here that the Co-Owner, having been told that there was a warrant for Plaintiff's arrest, consented to a police search of the co-owned home for Plaintiff only. The allegation that O'Connor exceeded the scope of that consent, in order to search for evidence and to remove and open a locked box safe containing cash and jewelry, states a claim for an

unreasonable search sufficient to avoid dismissal at this preliminary stage of the litigation.[2]

### 2. The Arrest and Detention

Plaintiff also alleges that he was arrested without probable cause and falsely imprisoned for four weeks until the charges against him were dismissed. The Court construes this claim as being asserted against one or more of the "John Doe" defendants.[3]

An arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Walmsley v. Philadelphia,

---

[2] The Court of Appeals for the Third Circuit has determined the scope of damages available for an unconstitutional search.

> "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy--including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."

Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2001) (quoting Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999)). Thus, the scope of damages available is sufficient to encompass Plaintiff's claim that he was permanently deprived of the jewelry contained in the box safe.

[3] To the extent this claim is based upon any alleged deceit in connection with a police officer having advised Plaintiff's counsel that he was wanted only for questioning, the Complaint fails to state a claim. It is permissible for police to use deceit to obtain custody of a criminal suspect. See, e.g., United States v. Rengifo, 858 F.2d 800 (1st Cir. 1988); Yekimoff v. Seastrand, 2004 WL 556707 (D.N.H. Mar. 19, 2004); U.S. v. Harris, 961 F.Supp. 1127 (S.D. Ohio 1997). Moreover, Plaintiff alleges that, before he surrendered, he saw a newspaper report that there was a warrant for his arrest. Accordingly, it does not appear that Plaintiff could have relied upon any deceit by the police officer.

872 F.2d 546 (3d Cir. 1989) (citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994) (section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification."  Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Serv., Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a Fourth Amendment claim for false arrest, a plaintiff must allege that:  (1) there was an arrest; and (2) the arrest was made without probable cause.  Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed."  Lind v. Schmid, 67 N.J. 255, 262 (1975).  "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt."  Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).  Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense."  Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting

14

Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F.Supp.2d 743, 755 (D.N.J. 1999) (citing Groman); see also Anela v. City of Wildwood, 595 F.Supp. 511, 512 (D.N.J. 1984) (holding person for any length of time without legal justification may be violation of right to liberty under Fourteenth Amendment and thus states claim of false imprisonment under § 1983).[4]

Plaintiff here seems to base his claim for false arrest and false imprisonment solely upon the fact that the charges were later dropped.  Plaintiff fails to explain the reason that the charges were later dropped.  Moreover, the dropping of criminal charges does not, of necessity, establish that, at the time of arrest, the facts and circumstances were not sufficient to warrant a prudent person believing that Plaintiff had committed a crime.  Plaintiff fails to allege any facts regarding the facts known to

---

[4] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

the police at the time of his arrest.  Accordingly, the Complaint fails to state a claim for false arrest or false imprisonment.

**B.    Pendent State Law Claim**

Plaintiff attempts to assert a state law claim for slander, based upon false information given to the press.  The Complaint fails to state such a claim.

Under New Jersey law, to establish a prima facie case of defamation, whether denominated libel or slander, a plaintiff must show that the defendant communicated a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters third persons from associating with the plaintiff.  Whether a statement is defamatory is a matter of law to be determined by the court.  Dello Russo v. Nagel, 358 N.J.Super. 254, 262-264 (N.J. App. Div. 2003).

Initially, as mentioned above, the only person alleged to have given information to the press is Chief Pigott, who is not named as a defendant.  In addition, the statements he is alleged to have given to the press are (1) that there was an arrest warrant for Plaintiff, as of May 5, 2008, (2) that Plaintiff was being sought on various drug charges, and, (3) after Plaintiff's arrest, that Plaintiff had surrendered and been charged.  None of these statements appears, based on the facts alleged in the Complaint, to be false.  Finally, Plaintiff has failed to allege any facts suggesting that the statements made to the press harmed Plaintiff's reputation in the eyes of the community or deterred

16

third persons from associating with him.  For example, he fails to allege any facts suggesting that he was of good reputation prior to the statements to the press or any facts demonstrating the effect of the press reports on his standing in the community.[5]  Accordingly, the Complaint fails to state a claim for defamation.

## V. CONCLUSION

For the reasons set forth above, the Fourth Amendment unreasonable search claim may proceed as against O'Connor.  All other claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  The Court will issue an appropriate order.[6]

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** April 4, 2011

---

[5] The Court notes that Plaintiff surrendered at a parole office, suggesting that he was already on probation or parole for a criminal offense.  Also, the New Jersey Department of Corrections Inmate Locator reflects that Plaintiff is confined pursuant to conviction for three separate controlled-dangerous-substance offenses, two of which occurred in 2008 and the third of which occurred in 2009.  See https://www6.state.nj.us/DOC_Inmate/details?x=1331823&n=2 .

[6] Plaintiff may attempt to file an amended complaint.  When an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

17