**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN BRADLEY GUMBS,<br><br>    Plaintiff,<br><br>    v.<br><br>DETECTIVE JOHN O'CONNOR, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 10-1520 (MLC)<br><br>**O P I N I O N** |

**THE PRO SE PLAINTIFF**, Kevin Bradley Gumbs, brings the action against the defendants, Detective John O'Connor, Detective James Lopez, and Officer G. Rivera, pursuant to 42 U.S.C. § 1983 ("Section 1983"). (See dkt. entry no. 61, 2d Am. Compl.) He asserts that the defendants violated his rights under the Fourth and Fourteenth Amendments. He specifically claims that all three defendants "searched plaintiff's home without a warrant for the plaintiff or a search warrant for the home." (Id. at 4, 5.) He also claims that O'Connor and Lopez searched and "seized a safe from the home without inventory" and thus deprived him of both the safe and its contents. (Id. at 4; see also dkt. entry no. 113, 6-10-13 Order at 1.)[1]

---

[1] The Court earlier determined that other claims raised by Gumbs were not viable. (See dkt. entry no. 59, 1-12-12 Mem. Op. & Order; dkt. entry no. 21, 4-4-11 Screening Order; dkt. entry no. 20, 4-4-11 Screening Op.)

**THE DEFENDANTS** now move for summary judgment in their favor and against Gumbs. (See dkt. entry no. 103, Defs. Mot.) They raise five arguments that warrant discussion. (See dkt. entry no. 103-1, Defs. Br.) First, they argue that Gumbs lacks standing to assert a claim related to the defendants' search of his home. (See id. at 13-17.) Second, notwithstanding Gumbs's standing, they argue that Gumbs's co-tenants consented to the search of his home, thus rendering the search constitutionally valid. (See id. at 17-24.) Third, they argue that one of Gumbs's co-tenants consented to the search of the safe. (See id. at 24-35.) Fourth, they argue that they are each entitled to qualified immunity. (See id. at 35-40.) Fifth, they argue that Gumbs may not, through his briefing on the Motion and Cross Motion, amend the operative pleading to add a claim for the loss of his property, i.e., the safe and its contents. (See dkt. entry no. 112, Defs. Reply Br. at 19.)

**GUMBS** appears to have both opposed the Motion and cross-moved for summary judgment against the defendants and in his favor. (See dkt. entry no. 110, Cross Mot.; dkt. entry no. 110, Responsive Statement of Material Facts; dkt. entry no. 110, Gumbs Br.) Gumbs argues, inter alia, that his co-tenants' consent to the search of his home was coerced because the defendants misrepresented that they held a warrant for his arrest. (See Gumbs Br. at 22, 23, 27; see also dkt. entry no. 110, Gumbs Statement of Facts at ¶ 9.)

**THE COURT** now resolves both the Motion and the Cross Motion on the papers submitted and without oral argument pursuant to Local Civil Rule 78.1(b).

## I. STANDING

**THE DEFENDANTS** first argue that Gumbs lacks standing to assert a claim that relates to the defendants' search of his home. They concede that Gumbs had a reasonable expectation of privacy in his home, but argue that he nevertheless lacks standing because he was not physically present during that search. (See Defs. Br. at 16.) The defendants rely on Eiland v. Jackson, 34 Fed.Appx. 40, 41-42 (3d Cir. 2002). In Eiland, the Third Circuit Court of Appeals ("Third Circuit") "put some meat on [the] bare bones" of standing jurisprudence relating to the "knock and announce" rule. Id. at 41.

**THE THIRD CIRCUIT**, while discussing the facts that underlay that case, noted both that (1) the police officers there had a valid search warrant for the plaintiff's home, and (2) the plaintiff was not present when the police failed to knock and announce their presence. See id. at 41-42. The Third Circuit then stated:

> It is critical to note that [the plaintiff] did not and does not contest the validity of the search warrant that was executed at the house. His only claim was and is that there was a failure to knock and announce before a forced entry was made. Thus, the question becomes whether the failure to knock and announce impinged upon

3

>     [his] right to privacy in a way that exceeded the
>     permissible invasion of privacy occasioned by the
>     execution of a valid search warrant.  We conclude that
>     it did not.

Id. at 42.

    **THE COURT**, based on the Third Circuit's reasoning in Eiland, finds two issues with the defendants' reliance on that case. First, the defendants have conceded that they, unlike the police officer defendants in Eiland, did not have a valid search warrant for the premises.  (See Defs. Reply Br. at 20-21 ("It is undisputed that the defendants did not have a search warrant at the time of the seizure . . . .").)  The Third Circuit found the existence of a valid search warrant "critical" to the reasoning in Eiland.  See 34 Fed.Appx. at 42.  Second, the holding in Eiland appears to have been specific to the knock and announce rule, which is not at issue here.

    **THE COURT** thus intends to deny the Motion insofar as it concerns the issue of Gumbs's standing to challenge the search of his home.  The case relied on by the defendants is inapposite, and other, binding authority -- authority that squarely addresses the issues raised in the action -- demonstrates that "there can be no question of [his] standing to challenge the lawfulness of the search.  He was the one against whom the search was directed, and the house searched was his home."  Bumper v. North Carolina, 391

4

U.S. 543, 548 n.11 (1968) (citations omitted) (internal quotation marks omitted).

## II. THE LAWFULNESS OF THE SEARCH OF GUMBS'S HOME

**THE DEFENDANTS** assert that, notwithstanding the issue of standing, their search of Gumbs's home was valid because his co-tenants consented to that search. Because the defendants rely on consent to justify the lawfulness of that search, they have the burden of proving that such consent was freely and voluntarily given. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Bumper, 391 U.S. at 548.

**THE COURT** is mindful that the validity of one's consent to a search rests on voluntariness, and that there is "no talismanic definition of 'voluntariness'" that can be applied here. United States v. Price, 558 F.3d 270, 278 (3d Cir. 2009) (quoting Schneckloth, 412 U.S. at 224). Whether consent is voluntarily given is a "question of fact to be determined from the totality of the circumstances." Bolden v. Se. Pa. Transp. Auth., 953 F.2d 807, 824 (3d Cir. 1991); see Schneckloth, 412 U.S. at 226; Price, 558 F.3d at 277-78.

**THE RECORD** demonstrates that on May 2, 2008, the defendants suspected Gumbs of possessing and distributing controlled dangerous substances, i.e., cocaine and Roxicodone, and thus traveled to his home to arrest him. (See dkt. entry no. 103-2, Ex. E to Farsiou

5

Certification, 5-3-08 Report by Lopez.) When they arrived, they met Gumbs's co-tenants, his girlfriend, Patricia J. Rahner ("Miss Rahner"), and his girlfriend's mother, Patricia E. Rahner ("Ms. Rahner"). (See id. at 3 ("We were met by Patricia Rahner, Gumbs's girlfriend, who said he wasn't home."), with dkt. entry no. 110-1, Ex. C to Gumbs Certification, Sworn Statement of Ms. Rahner at 1 (showing that Ms. Rahner also answered the door and spoke with the defendants).)

**THE PARTIES** rely on different accounts of that meeting. The defendants, for example, point repeatedly to Lopez's report, where he states simply that "Rahner was asked if we could check inside and that she had the right to refuse. Rahner gave us verbal permission to come in." (5-3-08 Report by Lopez.) Gumbs offers a more detailed account, which was prepared by Ms. Rahner. She states that the defendants "came to the front door" and "informed [her] that they were looking for Kevin Gumbs." (Sworn Statement of Ms. Rahner at 1.) She also states that she "was told they had a warrant for his arrest. . . . I asked to see the warrant and the detective held up papers, further than an arms [sic] reach from me." (Id.) Ms. Rahner asserts that she was not allowed to inspect those papers. (See id.)[2]

---

[2] Miss Rahner offered a substantially similar account of these events at her deposition. (See dkt. entry no. 103-2, Ex. I to Farsiou Certification, 12-19-12 Dep. of Miss Rahner at 44:10-45:8.)

6

**GUMBS** asserts that the defendants misled his co-tenants when the defendants represented that they had a warrant for his arrest. (See Gumbs Br. at 19; Gumbs Statement of Facts at ¶ 7.) The Court is uncertain, based on the evidence of record, when the warrant issued for Gumbs's arrest was actually issued. (See dkt. entry no. 110-2, Ex. A to Gumbs Certification, 5-3-08 Report by O'Connor (indicating that O'Connor spoke with an assistant prosecutor on May 2, 2008, but failing to show when such warrants were actually issued); dkt. entry no. 103-2, Ex. G to Farsiou Certification, Warrant at 1 (certified by O'Connor on May 3, 2008, and issued by a judicial officer on May 6, 2008), 2 (same), 3 (same), 4 (certified by O'Connor on May 2, 2008, and issued by a judicial officer on that same date), 5 (certified by O'Connor on May 2, 2008, and issued by a judicial officer on May 6, 2008).)

**THE COURT**, based on the foregoing factual disputes, intends to deny both the Motion and Cross Motion insofar as concern this issue. The parties have shown the existence of at least two genuine disputes of material fact, i.e.: (1) whether the police had a warrant for Gumbs's arrest on May 2, 2008, when they arrived at his home; and (2) the extent to which Gumbs's co-tenants relied on the defendants' representations about their possession of a warrant for Gumbs's arrest when consenting to the defendants' search of his home.

### III. THE DEFENDANTS' REMAINING ARGUMENTS

**THE COURT** will not now address either the validity of the defendants' search of Gumbs's safe or the defendants' alleged entitlement to qualified immunity. It would be premature to discuss either of those issues before determining, as a threshold matter, whether the defendants violated Gumbs's rights under the Fourth and Fourteenth Amendments when they searched his home.

**THE COURT** will, however, address the defendants' argument that Gumbs should not be permitted to amend the Second Amended Complaint to add a claim for loss of property, i.e., his safe and its contents. To the extent that Gumbs is attempting to amend the pleadings at this stage, and through briefing, we agree with the defendants. See Warfield v. SEPTA, 460 Fed.Appx. 127, 132 (3d Cir. 2012) ("A plaintiff may not amend a complaint by raising arguments . . . in a brief in opposition to a motion for summary judgment."); Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007); Torske v. DVA Health & Nutrition GmbH, No. 11-3609, 2013 WL 1848120, at *5 (D.N.J. Apr.30, 2013) (citation omitted) ("[I]t is axiomatic that a plaintiff may not amend his complaint through later briefing[.]") We note, however, that the existing claims appear to encompass the damages that Gumbs seeks through such amendment. (See 4-4-11 Screening Op. at 13 n.1 ("[T]he scope of damages available [here]

is sufficient to encompass Plaintiff's claim that he was permanently deprived of the jewelry contained in the box safe.").)

## IV. CONCLUSION

**FOR GOOD CAUSE APPEARING,** the Motion will be denied insofar as it concerns the issue of standing, and denied without prejudice in all other respects. The Cross Motion will be denied insofar as Gumbs there attempts to amend the Second Amended Complaint, and denied without prejudice in all other respects. The Court will issue a separate Order.

    s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Date:    June 14, 2013